USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-2122 UNITED STATES, Appellee, v. NOEL FEMIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Kirsten M. Lacovara, with whom James E. Carroll and Peabody & ____________________ _________________ __________ Arnold were on brief for appellant. ______ Heidi E. Brieger, Assistant United States Attorney, with whom _________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ June 16, 1995 ____________________ BOWNES, Senior Circuit Judge. Defendant-appellant BOWNES, Senior Circuit Judge. ____________________ Noel Femia appeals from a jury conviction of conspiring to possess with intent to distribute quantities of cocaine, in violation of 21 U.S.C. 841(a)(1). Defendant forwards four issues on appeal which we consider seriatim. We affirm defendant's conviction. 1. The Alleged Violation of the Jencks Act - 18 U.S.C.  1. The Alleged Violation of the Jencks Act - 18 U.S.C.  _________________________________________________________ 3500 3500 ____ The factual basis for this issue is the accidental destruction of certain tape recordings by a DEA agent. This is the second time we have been called upon to decide the legal consequences of the destruction of the tape recordings. Some historical exegesis is necessary, most of which is taken from our prior opinion, United States v. Femia, 9 F.3d 990 ______________ _____ (1st Cir. 1993) ("Femia I").  _____ An indictment against defendant and eight other alleged co-conspirators was filed in the district court on October 3, 1986. Femia was not arrested until July 16, 1992. The facts relevant to the tape recordings can be summarized as follows. Cristopher LaPlante was the bookkeeper and one of the founding members of a large-scale cocaine operation, known as Triple X. The DEA started investigating Triple X in 1985. LaPlante entered into a plea bargain with the DEA. As part of the plea agreement, LaPlante covertly made twenty- -2- 2 four tape recordings of conversations he had with co- conspirators or customers of Triple X. The DEA set up three files for three of the alleged co-conspirators, Perea, Stone, and Femia. The LaPlante tapes were physically stored in the Perea file, which was cross-referenced to the other two files.  Trial of Femia's alleged co-conspirators was held in 1987. At this time Femia was still at large. The eight defendants were convicted either by trial or guilty pleas. Subsequent to those convictions, a DEA agent, newly-assigned to the case, authorized the destruction of all the LaPlante tapes contained in the Perea file. After his arrest and arraignment, Femia moved to suppress the testimony of LaPlante, a key government witness, on the ground that the destruction of the tapes violated his constitutional right to due process as annunciated in Brady _____ v. Maryland, 373 U.S. 83 (1963). The district court granted ________ Femia's motion to suppress. The government appealed. We reversed the district court, finding that there was no due process violation because the tapes were "not destroyed in bad faith." Femia I, 9 F.3d at 994. We also pointed out _____ that the district court had made no bad faith finding relative to the destruction of the tapes. Id. at 996. After ___ remand, the case was tried. The district court rejected -3- 3 Femia's claim that the destruction of the tapes was a violation of the Jencks Act. We start our analysis of this issue by quoting the district court's written rejection of defendant's Jencks Act claim: Defendant also contends that judgment of acquittal as to Count 1 is appropriate because the government violated the Jencks Act, 18 U.S.C. 3500. He bases this claim on the government's destruction of tape recordings made by its key witness, Cristopher LaPlante, and allegedly containing statements amounting to Jencks material. The Jencks Act provides that a court shall, upon defendant's request, order the government to produce statements made by its witness which relate to the witness's testimony. 18 U.S.C. 3500 (1970). Such statements may be used solely for impeachment purposes. Palermo v. United __________________ States, 360 U.S. 343, 349 ______ (1959). Defendant speculates that the tapes revealed the identities of large scale drug suppliers, thereby containing statements related to LaPlante's testimony. Because the tapes were destroyed I cannot review them and thus assess whether they fall within the purview of the Jencks Act. The record does not, however, require me to make the "dubious" inquiry of "reconstruct[ing] a [tape] no longer in existence using 'the very witness whose testimony the defendant seeks to impeach.'" United States v. _________________ -4- 4 Carrasco, 537 F.2d 372, 377 ________ (9th Cir. 1976) (quoting United ______ States v. Johnson, 521 F.2d ___________________ 1318, 1320 (9th Cir. 1975)). Here, the affidavits of Agent Reilly and Detective Kinder, which stated that the missing tapes "contained general conversations that were not specifically relevant to the Triple X investigation," support the ruling at trial that the missing tapes were not "Jencks Act materials with respect to the matters about which the government inquired on direct . . . ."  (Footnote omitted.) We review the district court's ruling for abuse of discretion. United States v. Augenblick, 393 U.S. 348 ______________ __________ (1969). Augenblick involved, inter alia, missing tapes that __________ _____ ____ were, without doubt, covered by the Jencks Act. The Court held that the ruling by the law officer and Board of Review that the tapes need not be produced under the Jencks Act was not an abuse of discretion. Id. at 355. In Palermo v. ___ _______ United States, 360 U.S. 343 (1959), the Court held that the _____________ final decision as to production of Jencks Act statements "must rest . . . within the good sense and experience of the district judge . . . ." Id. at 353. In United States v. ___ ______________ Foley, 871 F.2d 235, 239 (1st Cir. 1989), we found not _____ clearly erroneous the district court's ruling that so-called "302's" were not statements covered by the Jencks Act. The pertinent parts of the Jencks Act provide: -5- 5 After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. 18 U.S.C. 3500(b). The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means-- . . . . a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; 18 U.S.C. 3500(e)(2). There is nothing in the record indicating that any of the destroyed tapes contained statements related to the subject matter of LaPlante's testimony. On the other hand, the missing tape observation we made in Femia I is a strong _____ -6- 6 indication that the tapes did not contain Jencks Act statements: The evidence before the district court showed that any missing evidence--whether one considers allegedly missing fragments of the tapes for which copies exist or those tapes which no longer exist in any form--did not possess exculpatory value apparent ________ before law enforcement ______ destroyed the tapes. Agent Reilly and Detective Kinder provided affidavits stating that the destroyed tapes contained no references to Femia, his code names or numbers. Agent Reilly also explained that any tape containing references to Femia would have been transcribed. Femia I, 9 F.2d at 995. _____ In light of the facts and the applicable law, we rule that the district court neither abused its discretion nor clearly erred in finding and ruling as it did. We think its decision was clearly correct. 2. Whether the Supplemental Jury Instruction on Conspiracy 2. Whether the Supplemental Jury Instruction on Conspiracy _______________________________________________________ Was Reversible Error Was Reversible Error ____________________ The only way to understand this issue is to replicate what happened. After deliberating for sometime, the jury submitted two written questions to the judge. She responded as follows: Members of the jury, let me respond to your note, do it one at a time, and so I will state -7- 7 for the record, for Mr. Laughlin, each question. Question 1 is: Restate the charges. I interpret that to mean the accusations against Mr. Femia. I assume that's what you meant, that you didn't wish me to give you the instructions all over again. There are two sets of charges. Count 1 accuses the defendant of having been a member of a conspiracy to distribute cocaine. That's Count 1. There are two -- there's one entirely separate set of charges, Counts 22 through 45, that accuse the defendant of having possessed on specific dates, specific amounts of cocaine with the intent to distribute that cocaine. That's the second set of charges. Now, let me go back for a moment and explain again to you each of these. With respect to Count 1, the conspiracy charge, the government has to prove, first, that there was an agreement between two or more people, not necessarily Mr. Femia, could have been anybody. The indictment names some people, but any two people, that there was an agreement between any two people to distribute cocaine. That's the first thing it has to prove. -8- 8 The second thing it has to prove is that Mr. Femia at some point, while this agreement, this conspiracy was in existence, willfully, that is, with an intent to violate the law, became a member of that conspiracy. That's what the government has to prove. The second question was: In Count 1, is paragraph 1 the _______ ___ summation of charges against _________ Mr. Femia, or is paragraph 2b (Count 1) part of the summation _________ of charges or simply an explanation of charges in ___________ Counts 22-45. Specifically--is the defendant charged with conspiracy to distribute cocaine or conspiracy to distribute the specific 47 kilograms named in paragraph 2b. (Id.) ___ The judge answered the question thus: Now you also inquired about Paragraph 2B [b] in this indictment. The conspiracy charge sets out, in general, what the conspiracy was all about. It then goes on in Paragraph 2 to describe, in general, the role that various of the defendants played in this conspiracy. And then it goes on in Paragraph 3 and its various sub parts to say what the purpose of this, the object of this conspiracy was. And it kind of goes on and on and on about that. In Paragraph 2B [b], the government says what it -- what it says Mr. Femia did. But in your deliberating on your verdict and deciding this case, -9- 9 you should base, base your verdict not on what the indictment says, but on all of the evidence. Taking all of the evidence, you need to decide what Mr. Femia did, what Mr. Femia knew, what the circumstances were. And then based on all of that, all the evidence in the case, what the witnesses told you, what the exhibits tell you, did he willfully become a member of the conspiracy? And specifically did the government prove and convince you that beyond a reasonable doubt that he -- there was this agreement and that he willfully became a member of the conspiracy. The first paragraph of Count One of the indictment charged nine named persons including Femia: defendants herein, did knowingly and intentionally combine, conspire, confederate and agree with each other, . . . and with other persons to commit an offense against the United States, namely to possess with intent to distribute, and to distribute, quantities of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Paragraph 2b of Count One of the indictment states: b. Defendant Noel Femia also supplied large quantities of cocaine to Triple X. From July 1984 to April 1985, defendant Noel Femia caused the delivery of approximately forty-seven kilograms of -10- 10 cocaine, having an aggregate wholesale value of nearly two million dollars, to Triple X on consignment. Following delivery, this cocaine was sold and distributed by members and associates of Triple X. By now it is axiomatic "that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. ____ Naughten, 414 U.S. 141, 146-47 (1973). In this connection we ________ note that defendant did not object to the original conspiracy charge which was, of course, more extensive and detailed than the supplemental one, but basically conveyed the same message. It is difficult for us to understand exactly the basis for defendant's contention that the supplemental instruction was erroneous. It might be inferred from defendant's brief that he is arguing that the jury should have been instructed that in order to convict Femia on the conspiracy count, the government had to prove the overt acts alleged in paragraph 2b. At the sidebar colloquy after the supplemental instructions were given, the judge asked defense counsel: "What do you want me to tell them?" Counsel replied: MR. CARROLL: This is what I want you to say, Judge. I want you to say that Paragraph 2B [b] is what the government has accused Mr. Femia of doing. That's what they said he did in -11- 11 this conspiracy, that was his role in the conspiracy, and the government must prove beyond a reasonable doubt that is what he did. The judge quite correctly pointed out: "No. That's not the law."  The Supreme Court unanimously held in United States _____________ v. Shabani, 115 S. Ct. 382, 383 (1994), that 21 U.S.C. 848 _______ does not require the government to prove that a conspirator committed an overt act in furtherance of the conspiracy. We do not think that United States v. Sepulveda, 15 F.3d 1161 ______________ _________ (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994), is of _____ ______ any help to defendant. In Sepulveda we held: _________ Here, the challenged convictions center around a charge of conspiracy to possess and distribute cocaine. To prove a drug conspiracy charge under 21 U.S.C. 846, the government is obliged to show beyond a reasonable doubt that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense (here, possession of cocaine with intent to distribute, 21 U.S.C. 841(a)(1). Id. at 1173 (citations omitted).1 That was what the ___  ____________________ 1. Since Sepulveda, we have clarified that the "intent to _________ commit the underlying substantive offense" conspiracy element is properly construed as an "intent to effectuate the commission of the substantive offense." United States v. ______________ Piper, 35 F.3d 611, 615 (1st Cir. 1994), cert. denied, 115 S. _____ _____ ______ Ct. 1118 (1995). -12- 12 supplemental instructions charged here. And even if Sepulveda can be read otherwise, it is trumped by Shabani. _________ _______ We find no error in the supplemental instructions. 3. Was the Evidence on the Conspiracy Count Sufficient 3. Was the Evidence on the Conspiracy Count Sufficient ___________________________________________________ for Conviction? for Conviction? _______________ In reviewing the record to determine whether the evidence was sufficient to convict, we assess the evidence in the light most favorable to the government. The well-established standard for evaluating sufficiency claims requires us to review the evidence as a whole, including all reasonable inferences from that evidence, in the light most favorable to the government. If, in so doing, we find that a rational trier of fact could find guilt beyond a reasonable doubt, we have no option but to affirm the jury's verdict. We may not weigh the evidence, and all credibility questions must be resolved in favor of the verdict. United States v. Argencourt, 996 F.2d 1300, 1303 (1st Cir. _____________ __________ 1993) (citations omitted), cert. denied, 114 S. Ct. 731 _____ ______ (1994). See also United States v. De La Cruz, 996 F.2d 1307, ___ ____ _____________ __________ 1311 (1st Cir.), cert. denied, 114 S. Ct. 356 (1993); United _____ ______ ______ States v. Innamorati, 996 F.2d 456, 469 (1st Cir.), cert. ______ __________ _____ denied, 114 S. Ct. 409 (1993). ______  ____________________  -13- 13 Applying this focus to the record we summarize the evidence. Cristopher (Cris) LaPlante, the chief witness for the prosecution, testified that he, Alan Stone, and Edward Intinarelli pooled their resources and shared their contacts to form a drug cartel in 1984 for the purpose of purchasing and selling cocaine and marijuana. The cartel was known as "Triple X" or "XXX." Defendant was a drug supplier for Stone and Intinarelli. LaPlante met with defendant "numerous times" to further Triple X's business. LaPlante explained that those who did business with Triple X were given code names and numbers. Defendant's code name was Max and his code number was 86. After a raid on Intinarelli's house, the code numbers were changed in January of 1985 "to protect the identities of the suppliers and the customers and the employees." Defendant's new code number was 898. Defendant was contacted through Fem's Gas Station on Route 35 in Framingham, Massachusetts, which he owned. Defendant told LaPlante that he intended to use the proceeds from the cocaine sales to build a housing development on a large tract of land he owned and then retire. LaPlante saw entries about defendant in a notebook, used by Intinarelli to record drug transactions. Phillip Moore was an employee of Triple X. His duties consisted of holding the cocaine ("sitting on it") prior to sale, breaking it up into small saleable amounts, -14- 14 and delivering it to customers. He was paid $1,000 a week. Moore introduced defendant to Stone in the spring of 1984; he told Stone that defendant could supply him with cocaine. Moore testified about three cocaine transactions involving defendant. All three followed the same format. Moore parked his car unlocked in a parking lot. He then went into an adjacent bar. Defendant subsequently joined him and they had a drink together. Within a short time, defendant would tell Moore that he should leave. Moore would then leave the bar and get into his car. Each time this scenario was played out, there was a package of cocaine wrapped in duct tape on the back seat of the car. Moore took the cocaine back to the "safe" house where he weighed and tested it. Moore then "sat" on the cocaine until he received instructions from Stone. He then broke it up into small amounts and delivered it to customers.  Christine Lenhard testified under a grant of absolute immunity. She worked for Triple X as a "mule"; she delivered cocaine to purchasers and picked up the money. She was paid $1,000 a week by Triple X. She was romantically involved with defendant. The Triple X partners that she knew personally were LaPlante and Intinarelli. Lenhard knew defendant's code name and number. She knew, based upon observations and her work for Triple X, that defendant supplied the cartel with cocaine. -15- 15 Donna Dinallo-Beane also testified under a grant of absolute immunity. She lived with LaPlante during Triple X's operations and, like Lenhard, was employed by Triple X as a "mule." She knew beyond doubt that defendant supplied cocaine to Triple X. Based upon the evidence and the reasonable inferences to be drawn from it, we find that it was sufficient to sustain defendant's conviction on the conspiracy count. 4. The Refusal of the District Court to Grant a Judgment of 4. The Refusal of the District Court to Grant a Judgment of ________________________________________________________ Acquittal on Counts 22-24 of the Indictment or to Dismiss Acquittal on Counts 22-24 of the Indictment or to Dismiss _________________________________________________________ These Counts with Prejudice. These Counts with Prejudice. ____________________________ This rather unique issue requires some explanation. The indictment charges as follows: COUNTS TWENTY-TWO THROUGH _______________________________ FORTY-FIVE: (21 USC 841(A)(1) __________ - Possession of Cocaine with Intent to Dist.; 18 USC 2 - Aiding & Abetting) The Grand Jury further charges that: 1. On or about the dates listed below, at Ashland, Concord, Framingham, Gardner, Holliston, Hopkinton, Hudson, Marlborough, Milford, Natick, Northboro, Upton and elsewhere in the District of Massachusetts, 2. NOEL FEMIA a/k/a "ABDULE" a/k/a "MAX" a/k/a "#86" [and others] defendants herein, acting in concert and in furtherance of -16- 16 the conspiracy described in Count One, did knowingly and intentionally possess with intent to distribute, and did distribute, the following quantities of cocaine, a Schedule II narcotic controlled substance. Then follows a three-column list. The first column is entitled "Count" and under it are listed in chronological order the words "Twenty-Two" through "Forty-Five." The second column is headed "DATE" and opposite each numbered count are specific dates starting with "July 24, 1984" opposite "Twenty-Two" and ending with "March 22, 1985" opposite "Forty-Five." The third column is entitled "Amount" "(approximate"). Listed in this column to correspond with the count and date columns are amounts in kilograms and grams. Defendant was charged in Counts Twenty-Two through Forty-Five with possessing with intent to distribute and distributing specific amounts of cocaine on specific dates. The jury found defendant not guilty on Count Forty- Five, but did not return any verdicts on Counts Twenty-Two through Forty-Four. In effect, there was a hung jury as to these counts. The government moved that Counts Twenty-Two through Forty-Four be dismissed without prejudice. Defendant _______ objected and moved for judgment of acquittal on the counts, or, in the alternative, that they be dismissed with ____ prejudice. A hearing was held. The district court granted -17- 17 the government's motion and denied defendant's motions. The trial judge stated: Defendant's assertion as to Counts 22 through 44 is similarly unpersuasive. He insists that since the government offered the same proof for Counts 22 through 44 as for Count 45 -- LaPlante's testimony and certain ledgers he maintained -- it was an aberration that the jury did not acquit him on those counts as well. In fact, the government did not simply duplicate the evidence for each count. Although LaPlante was the key witness as to all substantive charges, each charge reflected a separate transaction and corresponding entry in the ledger and the testimony was, in fact, different as to each. Matters of credibility are for the jury and it may believe some portions of a witness's testimony and disbelieve others. United States v. ___________________ Jackson, 778 F.2d 933, 942 (2d _______ Cir. 1985) (upholding instruction that "jurors are not required to reject or accept any particular witness's testimony in toto.") Since the evidence, if believed, was sufficient to sustain convictions as to Counts 22 through 44, judgment of acquittal is inappropriate. See Fed. R. Crim. P. 29(a). ___ Defendant's renewed motion for judgment of acquittal is therefore denied. At the sentencing hearing I allowed the government's motion to dismiss without prejudice _______ _________ -18- 18 these same counts (Counts 22- 44). For the reasons outlined, defendant's alternative motion to dismiss with prejudice is ____ _________ also denied. The case law holds squarely that a defendant does not have standing to appeal a without-prejudice dismissal of an indictment. In Parr v. United States, 351 U.S. 513, 516- ____ ______________ 18 (1956), the Court held that a defendant does not have standing to appeal the dismissal of an indictment because he is not legally aggrieved by such action. The Court pointed out the obvious: "The testing of the effect of the dismissal order must abide petitioner's trial, and only then, if convicted will he have been aggrieved." Id. at 517. ___ In United States v. Moller-Butcher, 723 F.2d 189 ______________ ______________ (1st Cir. 1983), there was an attempted appeal in which the defendant there sought, as does the defendant here, to have an indictment dismissed with prejudice. Citing to Parr, we ____ ____ held that "absent extraordinary circumstances, a defendant has no standing to appeal the dismissal of an indictment." Id. at 190. See also United States v. Holub, 944 F.2d 441, ___ ___ ____ ______________ _____ 442 (8th Cir. 1991); United States v. Reale, 834 F.2d 281, ______________ _____ 282 (2d Cir. 1987); United States v. Day, 806 F.2d 1240, 1242 _____________ ___ (5th Cir. 1986). We see no extraordinary circumstances here. We cannot help but observe, however, that because defendant has been convicted on the conspiracy count there -19- 19 seems little reason for keeping the indictment alive much longer. The judgment below is Affirmed. Affirmed. _________ -20- 20