Karen ROMANO, Plaintiff, Appellee,

v.

U–HAUL INTERNATIONAL, U–
Haul Company of Maine, Inc.,
Defendants, Appellants.

No. 99–2328.

United States Court of Appeals,
First Circuit.

Heard Aug. 3, 2000.

Decided Dec. 7, 2000.

658

S. Elaine McChesney, with whom Patricia J. Hill, Daniel J. Jackson, James M. Hankins and Bingham Dana LLP were on brief, for appellants.

Jeffrey Neil Young, with whom Stephen J. Sucy, and McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A. were on brief, for appellee.

Before TORRUELLA, Chief Judge, CASELLAS * and SARIS,** District Judges.

TORRUELLA, Chief Judge.

This is an appeal from a jury verdict in the District of Maine finding that appellants U–Haul International and U–Haul Company of Maine unlawfully terminated appellee Karen Romano on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 and the Maine Human Rights Act. Appellants (for simplicity,[1] referenced in this appeal as U–Haul) do not appeal the underlying jury finding of liability. Instead, they oppose the inclusion of U–Haul International in this lawsuit, contending that it cannot properly be considered appellee's "employer" for purposes of Title VII. In addition, U–Haul appeals several issues regarding the imposition of punitive and other damages. We affirm the jury verdict and subsequent action of the district court in all respects.

## BACKGROUND

In mid-April of 1996, Greg Nadeau, Manager of the Waterville, Maine U–Haul Center, placed an advertisement in the local paper for a customer service representative. Appellee Karen Romano re-

---

* Of the District of Puerto Rico, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

1. A chief contention in this appeal is whether U–Haul International, U–Haul Company of Maine's parent corporation, is a proper defendant in this lawsuit. Our designation of appellants as "U–Haul" for portions of this opinion is a mere convenience and not intended as a substantive comment on the merits of appellants' claims.

sponded to the advertisement and was told by Nadeau that the job entailed answering phones, renting trucks, and installing trailer hitches. After informing Nadeau that she had customer service experience, had worked with computers, and enjoyed working on cars with her husband (though she had no formal mechanical background), Romano was hired for the position.

Romano began part-time work on May 1, 1996. On her second or third day of work, U–Haul Company of Maine President Paul Smedberg called the Waterville Center. Romano answered the phone. Smedberg seemed quite surprised, inquiring twice whether he had reached U–Haul of Waterville, and then asked to speak with Nadeau. From hearing Nadeau's side of the conversation, Romano discerned that there was a problem with her hiring. After hanging up the phone, Romano testified that Nadeau told her that: "they didn't want women installing hitches, that women are supposed to be working in the main office."

No further training of Romano took place. At the end of her first week, Romano learned that a new employee, Robert Runshe, had been hired. Nadeau reportedly told Romano that he had not hired Runshe; that they "came in over his head." On May 14 or 15, Nadeau called Romano and terminated her employment. According to Romano, Nadeau apologized, claimed no responsibility in the decision but said that it came from higher up. He explained, "The only problem you have is you sit when you pee." Later, Nadeau allegedly repeated that Romano had been fired because of her sex to Romano and her then-husband Nick Romano, to Robert Runshe, and to Romano's father, Roland Daigneault. U–Haul, in contrast, claimed that Romano was fired because she did not have hitch installation experience and there was no time to train her.

Romano filed a complaint against U–Haul on May 18, 1999 charging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Maine Human Rights Act, 5 Me.Rev.Stat. Ann. § 4613. Following a three-day trial, the jury returned a verdict in favor of Romano and awarded $0 in compensatory damages, $15,000 in nominal damages, and $625,000 in punitive damages. The district court, concluding that the verdict reflected confusion over compensatory and nominal damages, resubmitted the special interrogatories relating to these damages. After asking the court whether only $1 may be awarded in nominal damages,[2] the jury returned with a verdict of $15,000 compensatory damages and $0 nominal damages. On July 15, 1999, the district court entered judgment for Romano in the amount of $15,000 compensatory damages and $285,000 punitive damages, adjusting the jury award to conform with Title VII punitive damages caps. By Order and Memorandum of October 28, 1999, the district court denied U–Haul's Motions for Judgment as a Matter of Law, for a New Trial, or, in the alternative, for Remittitur.

Appellant U–Haul appeals the following issues: (1) the submission of a jury instruction on the integrated-enterprise test instead of an "agency" test instruction to determine whether both U–Haul International and U–Haul Company of Maine should be considered Romano's employer[3] for purposes of Title VII; (2) the formulation of the integrated-enterprise test for purposes of jury instruction; (3) the determination by the jury that U–Haul International and U–Haul Company of Maine are a single employer for purposes of Title VII; (4) the imposition of punitive damages liability on U–Haul International; (5) the resubmission of Special Interrogatories 4 and 5 on compensatory and nominal damages to the jury; and (6) the amount

2. The district judge responded that while nominal damages are not limited to $1, the amount must be minimal.

3. Appellants do not dispute that U–Haul Company of Maine was Romano's employer.

of punitive damages awarded. Appellee Romano disagrees with the substance of appellants' arguments and claims that appellants have waived most of these arguments for failure to properly assert them prior to this appeal. We will discuss each issue in turn.

## DISCUSSION

### I. Determination of Employer Status for U–Haul International

A. Throughout pre-trial, trial, and post-trial motions, U–Haul International has consistently argued that it was not Romano's employer. In support, U–Haul International offers that it was not responsible for hiring, supervising, or firing Romano. Those responsibilities fell entirely upon U–Haul Company of Maine and its personnel. As to the relationship between U–Haul International and U–Haul Company of Maine, U–Haul described it, in its Motion for Summary Judgment, as a "complex contractual relationship between two entities." This relationship, from U–Haul International's perspective, is insufficient to render it liable under Title VII for Romano's firing.

U–Haul acknowledges that, under certain circumstances,[4] two entities may be sued as a "single employer" under Title VII. The district court, considering which test to instruct the jury on in determining single-employer status, elected to apply the integrated-enterprise test. The integrated-enterprise test, first developed to determine whether interrelated companies should be treated as one entity under the National Labor Relations Act, 29 U.S.C. § 164, examines four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. In pre and post-trial motions, U–Haul argued that either the integrated-enterprise test should be instructed with an emphasis on the labor factor, or, preferably, a joint-enterprise test[5] should be given to the jury.

■ Appellant U–Haul now appeals the district court's choice of the integrated-enterprise test and argues that common-law agency principles[6] should have determined the single-employer issue. U–Haul's legal support for application of the "agency" test is allegedly based on the principles articulated by the Supreme Court in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). According to U–Haul, the *Kolstad* decision mandates application of common-law agency principles in Title VII cases. As such, appellant urges that the district court should have instructed the jury using a test formulated by the Seventh Circuit in *Papa v. Katy Industries, Inc.*, 166 F.3d 937 (7th Cir.1999). U–Haul failed, however, to argue prior to filing the brief in this appeal that agency principles should be followed. Appellant had accordingly never cited *Papa* as the proper standard for instructing the jury. Because we find, as discussed below, that U–Haul has forfeited its agency argument, the district court's use of the integrated-enterprise test instead of appellants' agency test is subject to plain error review. Under this standard, we uphold the decision of the district court to instruct on the integrated-enterprise test for determining single-employer status.

4. For example, in a parent-subsidiary context.

5. A joint-enterprise test, as characterized by appellants, determines whether the two entities, while separate, jointly control the terms and conditions of employment.

6. Although entirely unclear in U–Haul's Brief, we assume that by "common-law agency principles" appellants mean that U–Haul International cannot be liable as Romano's employer unless it is found that U–Haul Company of Maine was U–Haul International's agent. An agent is characterized as one who is authorized to act on behalf of the principal, subject to the principal's control, and who has consented to act in an agency capacity. *See* Restatement (Third) of Agency § 1.01 (Tentative Draft No. 1, 2000).

Rule 51 of the Federal Rules of Civil Procedure states, in relevant part: "No party may assign as error the giving or the failure to give an instruction *unless that party objects thereto* before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection.*" Fed.R.Civ.P. 51 (emphasis added). While it is true that: "[f]rom the outset, UHI [U–Haul International] has consistently argued that it cannot be held responsible as Romano's employer as a matter of law," the agency argument presented in U–Haul's brief was not made by U–Haul in its objections to the jury instructions. Throughout the proceedings, U–Haul repeatedly made the argument that either the integrated-enterprise or the joint-enterprise test should apply. No mention at any time was made by U–Haul that agency principles should govern the employer test. U–Haul did submit a jury instruction on agency (Request No. 8), but then failed to raise it at the charge conference or to object to its absence after jury instructions were given. In fact, U–Haul made no reference to its Request No. 8 on the record at any point. U–Haul cannot claim that its agency argument is preserved simply because it generally objected to being characterized as appellee's employer.

U–Haul further argues that they did raise the agency issue by consistently objecting to the identity-of-employer test. They contend that "technical precision" is not necessary, provided that the objections have been made with "sufficient certainty to apprise the court of the movant's position." *Pstragowski v. Metropolitan Life Ins. Co.*, 553 F.2d 1, 3 (1st Cir.1977). And, in oral argument before this Court, appellants asserted that the agency test they now advocate is merely their joint-enterprise test under a different name, thereby preserving the agency argument. We fail to see how making a joint-enterprise argument equates with the agency test presented in this appeal. The joint-enterprise test does not adopt common law agency principles as the basis for its determina-

tion. The objections made by U–Haul to the district court's construction of the integrated-enterprise test and to the failure to give a joint-enterprise instruction are insufficient to preserve the agency issue on appeal.

■ U–Haul claims that the district court knew about the availability of an agency test, citing brief references to an agency standard in various party motions and at one point in discussions with the district court. An awareness by the parties and the district court that an agency standard could be one way of determining single-employer status is not sufficient to excuse appellants obligation to object to the jury instructions under Rule 51. The requirement that the grounds for objecting to a jury instruction must be distinctly stated is treated seriously by this Court. *See Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 944 (1st Cir.1995); *Elwood v. Pina*, 815 F.2d 173, 175–76 (1st Cir.1987). We will not excuse appellants' failure to argue for an agency test during jury instruction objections based on a purely speculative claim that the district court had some awareness that an agency instruction could be given.

■ U–Haul cites *Lebrón v. National Railroad Passenger Corp.*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), as alternative support for the agency theory being preserved. *Lebrón* stands for the proposition that when a party has sought protection under the United States Constitution or a federal law, that party may advance additional theories based on that claim that may not have been addressed by the lower courts. In *Lebrón*, appellant had claimed protection under the First Amendment. One argument advanced by petitioner was that Amtrak was a government entity, a theory that petitioner had "expressly disavowed" in the lower courts. *See id.* at 378, 115 S.Ct. 961. The Supreme Court permitted the government-entity argument as an alternative theory under appellant's First Amendment claim

because a constitutional right was at stake. This Court has a comparable exception: "cases involving important constitutional or governmental issues may be exceptional and, as such, there should be a full legal treatment of all legal issues involved, whether squarely introduced by the parties or not." *T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 930 (1st Cir.1995) (citing *National Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 628 (1st Cir.1995)). In this case, appellants are not advancing an alternative argument based on a claim of protection under the Constitution or federal law. Nor are important constitutional or governmental issues at stake. Neither *Lebrón* nor *Harwood*, then, saves appellants from forfeiture of their agency theory claim.

Appellant is also not entitled to application of the exception to the Rule 51 requirement set out in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In *City of Newport*, despite petitioners failure to make a Rule 51 objection, the district court ruled on the substance of the waived argument. *See id.* at 253–54, 101 S.Ct. 2748. The Supreme Court held that refusing to hear the claim on the merits when it was addressed by both lower courts would further no interest in fair trial administration. *See id.* at 255–56, 101 S.Ct. 2748. The *Newport* exception is inapplicable here, because the district court was not given the opportunity to address the substance of the agency argument. At no point in the record is there evidence that the district court addressed the agency argument on the merits. U–Haul's failure to bring the issue squarely before the district court bars application of this exception.

■ Had appellants fulfilled the requirements of Rule 51, review of the failure to give the jury an instruction on agency would have been governed by the "harmless error" standard of Federal Rule of Civil Procedure 61. Because appellants failed to preserve the issue on appeal, we

will not examine whether an agency instruction should have been given instead of an integrated-enterprise instruction unless plain error is apparent. Accordingly, this circuit will only review an issue that has been forfeited on appeal "to prevent a clear miscarriage of justice," *Elgabri v. Lekas*, 964 F.2d 1255, 1259 n. 1 (1st Cir. 1992), or "where the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Lash v. Cutts*, 943 F.2d 147, 152 (1st Cir.1991) (quoting *Smith v. MIT*, 877 F.2d 1106, 1110 (1st Cir.1989)).

■ Plain error might be found when "the failure to raise the claim below deprived the reviewing court of helpful factfinding; ... the issue is one of constitutional magnitude; ... the omitted argument is highly persuasive; ... the opponent would suffer any special prejudice; ... and, perhaps most importantly, ... the issue is of great importance to the public." *Play Time, Inc. v. LDDS Metromedia Communications, Inc.*, 123 F.3d 23, 30 n. 8 (1st Cir.1997). None of these factors apply to appellants' agency argument. The district court's failure to give the jury an agency instruction did not constitute plain error.

The Supreme Court has not addressed the issue of whether the integrated-enterprise test is appropriate in Title VII cases. The Court's decision in *Kolstad* does not change this, and U–Haul's reliance on this case is misplaced. Although *Kolstad* observed that Congress directed federal courts to interpret Title VII using agency principles, it only analyzed application of agency principles in the context of punitive damages and 42 U.S.C. § 1981a. *See* 527 U.S. at 539–46, 119 S.Ct. 2118. The Court did not address single-employer issues at all; *Kolstad*, then, does not demand that plain error be found in this case.

This Court has also declined to reach the issue of what the proper test for determining employer status under Title VII is. In *Mas Marques v. Digital Equipment*

*Corp.*, 637 F.2d 24 (1st Cir.1980), we upheld the district court's holding that the plaintiff's single-employer claim did not meet the standards of any of the possible tests. We identified three "recognized" methods for determining whether a single employer exists under Title VII: the integrated-enterprise test, the corporate law "sham" test, and the agency test. *See id.* at 27. None of the three tests were explicitly adopted or excluded by the First Circuit. The integrated-enterprise test currently appears to be the standard adopted, or at least applied, by a majority of circuits that have reached the issue. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir.1999) (FMLA, rather than Title VII claim); *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir.1999) (applying integrated-enterprise test without explicitly adopting it); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993–94 (6th Cir.1997); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir.1995); *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 n. 3 (11th Cir.1987); *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir.1983); *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–404 (5th Cir.1983). *Papa*, the case cited by U–Haul as applying agency principles, identified three instances in which it would be appropriate for a parent and subsidiary to be treated as a single employer under Title VII:(1) where the two corporations would be treated as one ("piercing the corporate veil") with regard to creditors' claims under corporate law; (2) where the subsidiary has been created to escape liability under the anti-discrimination laws; or, (3) where the parent corporation "directed the discussion, act, practice, or policy of which the employee of its subsidiary was complaining." *Papa*, 166 F.3d at 941. The Seventh Circuit's primary criticism of the four-factor integrated-enterprise test is that it could subject small firms to Title VII liability that should be protected by the fewer than fifteen (or twenty) employees exemption. *See id.* at 940. "[W]e are hesitant to find an error 'plain' where, as in this case, the legal basis for the proposed instruction ... is not 'clearly established.'" *Elwood v. Pina*, 815 F.2d 173, 176 (1st Cir.1987). The district court cannot be said to have committed plain error by following the bulk of available precedent on the issue.

Appellant's argument that the integrated-enterprise test should not have applied and that agency principles should have been substituted has been forfeited for failing to meet the requirement of Rule 51 and for failing to bring the issue before the district court at any time during the proceedings. Instructing the jury on an integrated-enterprise test to determine single-employer status resulted in no miscarriage of justice. Nor did the instruction affect the fairness and integrity of the judicial proceeding. Accordingly, the district court's instruction was not plain error and is affirmed.

■■■ B. U–Haul's next argument is that the instruction on the integrated-enterprise test was incorrect. Our review of jury instructions is de novo to ascertain whether the challenged instruction has "a tendency to confuse or mislead the jury with respect to the applicable principles of law." *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir.1994). If the instruction is erroneous, a new trial will be ordered if the error, based on the entire record, was prejudicial. *See id.* We will not, then, reverse a judgment if the error that resulted from the incorrect instruction was harmless. *See id.*

The district court accurately set out the four factors of the integrated-enterprise test. U–Haul complains that the district court did not emphasize the control over labor relations factor and that the district court included other considerations beyond the four factors. The jury was instructed as follows (emphasis added):

Now, to succeed on these claims, the plaintiff must first prove by a preponderance of the evidence, more likely true

than not true, that each of the defendants in this case was her employer.... In order to determine whether U–Haul International was the plaintiffs employer, you must consider the relationship between U–Haul International and U–Haul Company of Maine, including the extent to which there is: one, *interrelation of operations*; two, *common management*; three, *centralized control of labor relations*; and four, *common ownership.*

*Also, relevant* to this inquiry are *factors such as* whether U–Haul International exerts considerable influence over U–Haul Company of Maines *personnel policies, advertising and other decisions,* and whether U–Haul International controls U–Haul Company of Maines *sales goals, marketing strategies, sales catalogs,* and *advertising.*

We hold that the district court did not properly set out the integrated-enterprise test for the jury.

▆ Of the circuits that have applied the integrated-enterprise test, there is near unanimity that control of labor operations i.e., control of employment decisions, is the most important of the four factors. See *Hukill,* 192 F.3d at 442; *Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1244–45 (11th Cir.1998) (finding that control of employment decisions is critical under either integrated-enterprise or joint-employer test); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1070 (10th Cir.1998); *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997); *Swallows,* 128 F.3d at 994; *Cook,* 69 F.3d at 1241. We agree with the above circuits and adopt the view that control of employment decisions is a primary consideration in evaluating employer status.

▆ Appellants argue that the district court erred in failing to instruct the jury that the ultimate question was whether the parent corporation was a final decisionmaker in connection with the employment at issue. The circuits have differed in the level of control that is required in order to satisfy the control of employment prong. The Fifth and Tenth Circuits have held that a " 'parent's broad general policy statements regarding employment matters are not enough' to make the required showing of centralized control over labor relations. 'To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary.' " *Lockard,* 162 F.3d at 1070 (quoting *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993)); *see Lusk,* 129 F.3d at 777–78. The rationale for a more stringent requirement of inter-relatedness is based on the corporate law principle of limited liability. *See Lusk,* 129 F.3d at 778. Limited liability prevents a parent corporation from being held responsible for the acts of its subsidiaries unless the separateness of the entities is a sham, and "there is an absence of an arm's-length relationship among the companies." *Knowlton,* 189 F.3d at 1184.

▆ Although the argument for wholesale incorporation of limited liability has substantial support, the exclusive focus on individual hiring and firing decisions conflicts with the remedial public policy goal of anti-discrimination laws. See *Lusk,* 129 F.3d at 777 n. 3. In addition, a stringent emphasis on the labor prong renders the other three factors of the integrated-enterprise test devoid of impact, essentially reducing the test to a one-question inquiry. We choose to follow the more "flexible" approach adopted by the Second Circuit which focuses on employment decisions, but only to the extent that the parent exerts " 'an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.' " *Cook,* 69 F.3d at 1240–41 (quoting *Armbruster v. Quinn,* 711 F.2d 1332, 1338 (6th Cir.1983)). Accordingly, we hold that the district court should have directed the jury to place particular emphasis on the interrelation of employment decisions between U–Haul International and U–Haul Company of Maine.

We now turn to the additional considerations on which the district court instructed the jury and which U–Haul contests were improper. The district court began the employer instruction by setting out the four factors of the integrated-enterprise test. The court then identified other "relevant" factors, such as influence over personnel decisions and advertising and establishment of sales goals and marketing strategies. Appellants cite *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761 (5th Cir.1997), in support of the argument that these additional factors should not have been included in the instruction. In *Schweitzer*, the district court added financing of the subsidiary by the parent and inadequate capitalization of the subsidiary to the integrated-enterprise test factors. *See Schweitzer* at 765. The Fifth Circuit found error in the instruction, holding that the additional factors were irrelevant to the single-employer inquiry. *See id.*

Appellants should have no complaint with the instruction by the district court to consider influence over personnel decisions. This goes directly to the most important factor, control of employment decisions, making it indisputably relevant to the jury's deliberations. As for sales, marketing, and advertising, these factors may be considered under the interrelation of operations prong, but only insofar as the parent is involved "directly in the subsidiary's daily decisions." *Lusk*, 129 F.3d at 778. The district court should have been clear that U–Haul International's involvement must have been proactive in order to be relevant. Furthermore, by singling out advertising, marketing, and sales, the instruction might have led the jury to believe that these factors took significance over other, equally important considerations. At a minimum, the district court should have identified these factors as examples falling under the interrelation

of operations prong and provided other examples of interrelation.[7] The inclusion of additional considerations in this manner when instructing on the integrated-enterprise test was error.

Having held that the jury instruction on the integrated-enterprise test should have identified control of employment as the most important, but not exclusive factor, we examine whether the error was harmful to the appellants such that the case must be remanded for a new trial. *See* Fed.R.Civ.P. 61. A new trial is necessary only "if the error could have affected the result of the jury's deliberation." *Allen v. Chance Mfg. Co.*, 873 F.2d 465, 469 (1st Cir.1989). In making that determination, we consider whether we can say "with fair assurance that the judgment was likely unaffected." *Putnam Res. v. Pateman*, 958 F.2d 448, 471 (1st Cir.1992). In this case, the error in the formulation of the integrated-enterprise test was one of emphasis, and there was substantial evidence presented at trial on the employer question. We hold that the incorrect jury instruction likely did not affect the ultimate determination by the jury that U–Haul International was appellee's employer, and the error, therefore, was harmless.

The errors in the integrated-enterprise instruction were harmless when considered with the single-employer evidence presented at trial. Romano offered the following evidence relating to U–Haul International's status: (1) U–Haul Company of Maine is owned in its entirety by U–Haul International; (2) the two companies share three directors; (3) U–Haul International receives revenues from U–Haul of Maine's transactions as well as a daily report of the same; (4) U–Haul International establishes equipment rental rates; (5) U–Haul International provides accounting services to U–Haul of Maine; (6) U–Haul International provides legal, marketing, budgeting, accounting, and training

---

7. Examples include: shared employees, services, records, office space, and equipment, commingled finances, and handling by the parent of subsidiary tasks such as payroll, books, and tax returns. *See Knowlton*, 189 F.3d at 1184 n. 7; *Lusk*, 129 F.3d at 778.

services to U–Haul of Maine; (7) there is interchange of employees between the two companies; and, most importantly, (8) U–Haul International sets human resources and personnel policies, establishes the wage scale, the pay day, and all fringe benefits, must approve pay in excess of the scale, limits shift premiums and the hours of part-timers, processes payroll, prohibits payroll advances, must approve any rehire, maintains duplicate personnel records, and invites employees of U–Haul of Maine to present complaints concerning discrimination, sexual harassment and leaves of absence to U–Haul International's Human Resources Department. Based on this evidence, the jury could have concluded that each of the four factors of the integrated-enterprise test had been satisfied. Further, there were multiple examples of U–Haul International's involvement in employment-related matters. Even if the instruction had emphasized the control of employment prong, it is not apparent that the jury would have reached a different conclusion. The error, then, was not harmful, and no new trial is warranted.

■■■■ C. Appellants' related challenge to the Special Verdict Question 1: "Did U–Haul International control the operations of U–Haul Co. of Maine to such an extent that U–Haul Co. of Maine's actions are attributable to U–Haul International?," is waived for failure to object to the question at the time of trial. While appellants repeatedly objected to the instruction given by the district court to the jury on the integrated-enterprise test, they did not mention Special Verdict Question 1 at either the charging conference or during their post-instruction objections. Our review is thus limited to plain error, *see Arthur D. Little, Inc. v. Dooyang Corp.*,

147 F.3d 47, 53 (1st Cir.1998), of which there is none. Even under the abuse of discretion standard, Special Verdict Question 1 is not erroneous, because it does not conflict with our articulation of a proper integrated-enterprise instruction.

■■■ D. Appellants argue that there was insufficient evidence of an integrated-enterprise to support a finding that U–Haul International was appellee's employer.[8] Appellee counters that this argument is waived for failure to articulate the objection with specificity at the close of evidence. Whether or not appellants sufficiently renewed their objection[9] is not one we must address, because the evidence, as discussed above and viewed in the light most favorable to the appellee, is more than sufficient to uphold the determination by the jury. *See Transamerica Premier Ins. Co. v. Ober*, 107 F.3d 925, 929 (1st Cir.1997). For the same reason, we decline to reverse the district court's denial of a new trial on this issue. *See id.* (verdict must be so contrary to the evidence that a miscarriage of justice would result).

## II. Damages

A. The Supreme Court decided *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), just prior to the commencement of this trial. After commenting that *Kolstad* had potential impact on the case, the district court determined that its application would be resolved at the conclusion of evidence at trial. In this appeal, appellants challenge the jury verdict finding punitive damages as improper under *Kolstad*. Appellee counters that the argument is waived, not having been properly raised in appellants' motion for judgment as a matter of law. Given the relatively

---

**8.** Appellants have not been clear whether they are challenging the submission of the question to the jury or the finding by the jury. We will treat the question, as did the district court in its Order denying judgment as a matter of law or a new trial, as a challenge to the jury verdict.

**9.** All parties concede that appellants made the sufficiency argument at the close of appellee's case. The waiver issue concerns whether appellants incorporated this argument into their motion for judgment as a matter of law at the close of all evidence, as required to preserve the issue for appeal.

contemporaneous occurrence of the *Kolstad* decision and the trial in this case, as well as the district court's decision to address *Kolstad* after the close of evidence, we will address appellants' *Kolstad* argument.

■ *Kolstad* addressed the availability of punitive damages in Title VII cases under 42 U.S.C. § 1981a(b)(1); specifically, in what category of discrimination cases a plaintiff may recover punitive damages. The Court held that Congress intended to authorize punitive damages in "only a subset of cases involving intentional discrimination." *Id.* at 534, 119 S.Ct. 2118. The Court interpreted the statute's "malice" or "reckless indifference to the federally protected right[ ]," however, as not requiring evidence that the misconduct was egregious. *See id.* at 535, 119 S.Ct. 2118. Instead, the inquiry should focus on the acting party's state of mind. *See id.* Thus, punitive damages are available in cases in which the employer has, at minimum, engaged in the discriminatory action "in the face of a perceived risk that its actions will violate federal law." *Id.* at 536, 119 S.Ct. 2118.

■ The Court went on to discuss imputing punitive damages liability for the bad acts of the individual onto the employer. Common law limits vicarious liability for punitive damages through agency principles. *See id.* at 541, 119 S.Ct. 2118. As such, the Court held that an employer may be liable for punitive damages under Title VII in four instances: (1) when the agent has been authorized by the principal to commit the misconduct in question; (2) when the principal recklessly employed the unfit agent; (3) when the agent, acting in a managerial capacity, committed the misconduct within the scope of the employment; or, (4) when the agent's bad act was subsequently approved by the principal. *See id.* at 542–43, 119 S.Ct. 2118. The Court limited the reach of the third situation by absolving an employer from liability for punitive damages if a good-faith effort to comply with the requirements of

Title VII is made. *See id.* at 545–46, 119 S.Ct. 2118. It is this aspect of the *Kolstad* holding that is most critical to the instant case.

■ The district court issued a proper *Kolstad* jury instruction on the issue of punitive damages:

> You may award the plaintiff punitive damages if you find ... that the acts or omissions of the defendants were done maliciously or with reckless indifference to her federally protected rights.... You are not to award punitive damages against U–Haul International or U–Haul Company of Maine if you find that they made a good-faith effort to prevent discrimination in the workplace.

Appellants argue that the jury findings with respect to state of mind of the individuals who fired Romano, the managerial status of those individuals, and the efforts of U–Haul International and U–Haul Company of Maine to comply with Title VII were unsupported by the evidence presented at trial. We reject each of these contentions in turn.

■ As to the state of mind, there is ample evidence to suggest that Nadeau, Romano's immediate supervisor, was aware that firing Romano was discriminatory. Smedberg, the U–Haul of Maine President who allegedly ordered the firing, apparently knew about U–Haul's anti-discrimination policies. Construing the evidence most favorably to appellee, the jury could have reasonably concluded that the actions by Nadeau and Smedberg were taken with reckless disregard to appellee's federal rights.

■ The argument that Smedberg cannot be a "manager" of U–Haul International because he allegedly did not work for U–Haul International also fails. After finding that U–Haul International and U–Haul Company of Maine were a single employer for purposes of Title VII, Smedberg's position as President of U–Haul Company of Maine qualifies him as a man-

ager of U–Haul International as well. *See Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 447 (4th Cir.2000).

■ Appellants' assertion that appellee bears the burden of proving appellants' lack of good faith efforts to comply with Title VII is incorrect. Although *Kolstad* does not state specifically which party must put forth such evidence, the good-faith aspect of *Kolstad* has subsequently been characterized as an affirmative defense, *see Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 516 (9th Cir.2000); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir.1999), and an exception to vicarious liability, *see Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1009 (8th Cir. 2000); *Lowery*, 206 F.3d at 445; *Remedies: Kolstad's "Good–Faith" Defense Means What It Says*, 15 NO. 2 Fed. Litigator 47 (Feb.2000). We agree with these characterizations. The defendant, therefore, is responsible for showing good faith efforts to comply with the requirements of Title VII.

[29] *Kolstad* did not articulate any specific evidence necessary for a finding of good-faith effort. Circuit and district courts have since attempted to add substance to the standard, and we are persuaded by their general conclusions. We hold that a written non-discrimination policy is one indication of an employer's efforts to comply with Title VII. See *Lowery*, 206 F.3d at 446. But a written statement, without more, is insufficient to insulate an employer from punitive damages liability. *See Ogden*, 214 F.3d at 1010; *EEOC v. Wal–Mart Stores, Inc.*, 187 F.3d 1241, 1248 (10th Cir.1999). A defendant must also show that efforts have been made to implement its anti-discrimination policy, through education of its employees and active enforcement of its mandate. "Although the purpose of Title VII is served by rewarding employers who adopt anti-discrimination policies, it would be undermined if those policies were not implemented, and were allowed

instead to serve only as a device to allow employers to escape punitive damages for the discriminatory activities of their managerial employees." *Passantino*, 212 F.3d at 517.

■ Appellants did put forth evidence regarding their efforts to comply with anti-discrimination law. Both U–Haul International and U–Haul of Maine distribute materials regarding their policies of hiring women, minorities, and disabled persons. Managers and supervisors are advised that termination because of gender is prohibited by law and are instructed to hire on the basis of qualifications and not on discriminatory factors. U–Haul, however, did not put forth evidence of an active mechanism for renewing employees' awareness of the policies through either specific education programs or periodic re-dissemination or revision of their written materials. There was no testimony by appellants' witnesses that indicated that supervisors were trained to prevent discrimination from occurring. Further, appellants did not give examples in which their anti-discrimination policies were successfully followed. We do not hold that appellants were required to present evidence on *all* of these factors in order to qualify for the good-faith defense. But based on the evidence that was presented to the jury, construed most favorably for the appellee, we find that the jury's conclusion in this regard was reasonable, and we will not disturb the verdict.

B. Appellants next argue that the district court erred in resubmitting the compensatory and nominal damages questions to the jury after the jury returned an initial verdict of $0 in compensatory damages and $15,000 in nominal damages. The district court determined that there was a mistake on the verdict form; that the $15,000 nominal damages award did not accord with the district court's instructions that nominal damages be minimal, "such as one dollar." The district court surmised that the jury probably confused

nominal with compensatory damages and proposed resubmitting the two questions, after repeating the jury instructions, to the jury. The ultimate result of the resubmission resulted in the jury awarding $15,000 in compensatory damages and $0 in nominal damages.

Appellants did not object to the resubmission of the compensatory and nominal damages questions. In conference with the district judge, appellants suggested either resubmission of all the damages questions (i.e., including punitive damages) or declaring a mistrial because the jury "is fatally confused on the concept of damages ... [including] punitive damages." On appeal, appellants change tack, arguing that the jury was not confused and that the district court should not have resubmitted questions to the jury, but instead should have accepted the nominal damages award and reduced it accordingly.

 The standard of review for a determination of resubmission of special verdict questions is for abuse of discretion. *See Scott–Harris v. City of Fall River,* 134 F.3d 427, 435 (1st Cir.1997), *rev'd sub nom. on other grounds Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). A failure to object to verdict inconsistency before the jury is discharged constitutes waiver. *See Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.,* 79 F.3d 182, 201 (1st Cir.1996). Appellants' failure to object to resubmission when the district court gave both parties an opportunity to voice any objections similarly limits our review. We review the district court's decision, then, for plain error and hold that none is evident in the resubmission of the questions on compensatory and nominal damages.

 The district court characterized the verdict as improper because the jury awarded $15,000 in nominal damages. Nominal damages are intended to recognize a plaintiff's legal injury when no actual monetary damages may be discerned. *See Magnett v. Pelletier,* 488 F.2d 33, 35

(1st Cir.1973). The amount of nominal damages that may be awarded is not limited to $1. The nature of nominal damages compels, however, that the amount be minimal, and we have held that an amount of even $500 exceeds the appropriate higher boundary of nominal damages. *See id.* ("Five hundred dollars charged against an individual police officer is no mere token.") The district court was correct, then, in concluding that the jury could not have understood the concept of nominal damages properly. Appellants contend that this apparent mistake on the part of the jury is a mistake only as to the amount that they could award in nominal damages. The district court disagreed, surmising that the jury probably confused nominal with compensatory damages, prompting the decision to resubmit both questions. Appellants argue that resubmission was improper because special verdict questions may only be resubmitted to the jury when there is an inconsistency within the verdict and there is no view of the verdict that can reconcile the inconsistency. *See Santiago–Negrón v. Castro–Dávila,* 865 F.2d 431, 444 (1st Cir.1989). Appellants are correct that there was not an inconsistency within this verdict under all possible views. Had the district court adopted appellants' version of the jury's error, the nominal damages award would not be inconsistent with any other part of the verdict, but instead only incorrect as to the nominal damages instruction. This is not a case, then, in which the verdict is "inconsistent" as identified in *Santiago–Negrón.*

Under either the district court's or appellants' interpretations, however, the jury was obviously unclear as to the proper role for nominal damages. In *Atlantic Tubing & Rubber Co. v. International Engraving Co.,* the jury returned a verdict that the district judge believed contained answers to special interrogatories that were either "inconsistent or ambiguous." 528 F.2d 1272, 1275 (1st Cir.1976). The district court accordingly determined that additional, clarifying questions needed to be submitted to resolve the confusion. In

examining this decision, we held that the trial court had "considerable discretion ... [in its decision whether to refuse] to enter judgment on the bases of a jury's answer to a set of interrogatories," and that such a decision "should not be reversed simply because an appellate court concludes that it is possible to reconcile the jury's responses." *Id.* at 1276 (cited with approval in *Santiago–Negrón,* 865 F.2d at 444). In another case, we upheld the district court's resubmission of a jury question for clarification as "precisely correct" and affording the jury a "timely opportunity to straighten out both apparent and possible mistakes." *Poduska v. Ward,* 895 F.2d 854, 857 (1st Cir.1990). *See also Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 821 (8th Cir.1998) ("A district court has discretion to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury.").

The jury confusion in this case resembles that found in *Atlantic Tubing* and *Poduska,* and thus the requirement of absolute inconsistency established in *Santiago–Negrón* does not apply. The district court's decision to resubmit the two questions and allow the jury an opportunity to correct its mistake does not rise to the level of plain error, or even abuse of discretion. The jury had not yet been discharged, and counsel was provided with a full opportunity to object to the resubmission. *See Santiago–Negrón,* 865 F.2d at 444. The district court's interpretation of the jury's verdict made logical sense. It did not take the decision-making role away from the jury and gave the jury a second chance to render a proper verdict. The district court was clear in its instruction of what appellee needed to prove in order to be entitled to compensatory damages. There is no indication that the jury disregarded the jury instructions on damages on second hearing. The jury was not forced or coerced by the judge into reversing the nominal and compensatory damages awards. They could have simply reduced the nominal damages to an appropriate amount. We conclude that the district court took the appropriate and "safest" course. *Scott–Harris,* 134 F.3d at 435.

Because we affirm the district court's decision to re-instruct on compensatory and nominal damages, we need not address appellants' arguments regarding the availability of punitive damages in the absence of compensatory damages.

██ C. U–Haul's final argument is that the punitive damages award is grossly excessive and violates the Fifth and Fourteenth Amendments. The jury award of $625,000 was reduced to $285,000 by the district court to conform with the punitive damages cap imposed by 42 U.S.C. § 1981a(b)(3). Appellants allege that the 19 to 1 ratio between punitive and compensatory damages cannot stand when measured by the three guideposts identified by the Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). For the reasons set out below, we disagree.

██ Review of a punitive damages award is de novo, and the award will stand unless we find it "certain" that the amount in question exceeds that necessary to punish and deter the alleged misconduct. *See Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 14 n. 11 (1st Cir.1999). Similarly, in *BMW,* the Supreme Court identified punitive damages awards that "enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment" as those that surpass the goals of punishment and deterrence. 517 U.S. at 568, 116 S.Ct. 1589. Fundamental to the due process analysis is whether the defendant received fair notice that the conduct in question was prohibited and what the potential penalty for engaging in that conduct could be. *See id.* at 574, 116 S.Ct. 1589. To facilitate this inquiry, the Court provided three "guideposts" useful in determining whether a defendant received adequate notice of the punitive damages award: (1) the degree of reprehensibility

of a defendant's conduct; (2) the ratio between punitive and actual and potential damages; and, (3) a comparison of the punitive damages figure and other civil and criminal penalties imposed for comparable conduct. *See id.* at 574, 116 S.Ct. 1589.

■ This case was brought under Title VII of the Civil Rights Act of 1964, and the punitive damages award was authorized and limited by 42 U.S.C. § 1981a. A congressionally-mandated, statutory scheme identifying the prohibited conduct as well as the potential range of financial penalties goes far in assuring that appellants' due process rights have not been violated. In explaining why a comparison of comparable penalties is important to the excessiveness inquiry, the Court commented: "a reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Id.* at 583, 116 S.Ct. 1589 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 301, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part)). Accordingly, a punitive damages award that comports with a statutory cap provides strong evidence that a defendant's due process rights have not been violated. *See EEOC v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1249 (10th Cir.1999).

■ Even subjecting the $285,000 award to the *BMW* three-guidepost analysis, we find that the amount is constitutionally permissible. To begin, we note that the level of reprehensibility of appellants' alleged misconduct is "perhaps the most important indicium." *BMW,* 517 U.S. at 575, 116 S.Ct. 1589. Viewing the evidence most favorably to the non-moving party, we conclude that the harms inflicted upon Romano were more than "purely economic in nature." *Id.* at 576, 116 S.Ct. 1589. According to testimony, Romano was fired from her job as a customer service representative after less than two weeks of work, because she "sit[s] when she pees." This statement, and those made subsequently to her former husband, her father, and to the man hired to replace her, likely came as a humiliating shock and evinced a blatant disregard of federally and state-mandated anti-discrimination laws. In addition, evidence was presented at trial suggesting that Nadeau had said he would deny all of the alleged comments that he made regarding Romano being terminated because of her sex in the event of a discrimination suit. Given the testimony that appellants knowingly violated appellee's federally protected rights and then attempted to conceal this violation, we find that appellants' actions were more reprehensible than would appear in a case involving economic harms only. *See id.* at 579, 116 S.Ct. 1589.

■ The second consideration in the *BMW* analysis is proportionality. The Court dismissed any simple, mathematical formula in favor of general inquiry into reasonableness. *See id.* at 582–83, 116 S.Ct. 1589. As such, "particularly egregious" conduct that results in relatively low actual damages can support a higher ratio than conduct that is less reprehensible. *See id.* at 582, 116 S.Ct. 1589. Most ratios will fall within an acceptable range, with only a 500 to 1 disparity being explicitly cited by the Court as "'rais[ing] a suspicious judicial eyebrow.'" *Id.* at 583, 116 S.Ct. 1589 (quoting *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 481, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting)). In this case, the ratio between punitive and compensatory damages was 19 to 1. Given the low actual damages due to appellee's short period of employment and the difficulty in measuring actual damages in a case involving "primarily personal" injury, we hold that this is a constitutionally acceptable ratio between punitive and compensatory damages. *Deters v. Equifax Credit Info. Servs.,* 202 F.3d 1262, 1273 (10th Cir.2000).

Finally, there are no civil or criminal penalties imposed for comparable misconduct here. Enforcement of Title VII is

delegated to the private citizen who has suffered an injury. But as discussed above, a defendant, through the statutory scheme of Title VII and the punitive damages cap figures set out therein, has full notice of the potential liability to which it was subject. *See Deters,* 202 F.3d at 1272. Appellants' due process claim as to the amount of punitive damages awarded is rejected.

## CONCLUSION

We hold that U–Haul's argument for an agency standard rather than the integrated-enterprise test in determining U–Haul International's status as Romano's employer is waived for failure to object according to the requirements of Rule 51. The error in formulating the integrated-enterprise test for the jury is harmless, and the jury finding that U–Haul International was Romano's employer for purposes of Title VII liability is upheld. The district court's resubmission of special interrogatories on nominal and compensatory damages was proper. Finally, the imposition of punitive damages liability on U–Haul does not violate *Kolstad,* nor is the punitive damages award constitutionally excessive. On all issues, we **affirm** with costs awarded to appellee.