# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DEITRA R. GOLSON,

*Plaintiff-Appellee,*

v.

GREEN TREE FINANCIAL SERVICING
CORPORATION,

*Defendant-Appellant.*

No. 00-2365

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-98-3206-3-10BD)

Argued: September 24, 2001

Decided: January 10, 2002

Before MICHAEL, TRAXLER, and GREGORY, Circuit Judges.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

**ARGUED:** Regina Hollins Lewis, NEXSEN, PRUET, JACOBS &
POLLARD, L.L.C., Columbia, South Carolina, for Appellant. Law-
rence J. Needle, LAWRENCE J. NEEDLE, P.A., Columbia, South
Carolina, for Appellee. **ON BRIEF:** Susan P. McWilliams, NEX-
SEN, PRUET, JACOBS & POLLARD, L.L.C., Columbia, South Car-
olina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Deitra R. Golson brought an action against her former employer Green Tree Financial Servicing Corporation under Title VII, asserting that she was fired because she was pregnant. *See* 42 U.S.C.A. § 2000e(k), 2000e-2(a)(1) (West 1994). A jury found in favor of Golson on her pregnancy discrimination claim and awarded her $1,500 in compensatory damages, $30,000 in back pay, and $230,000 in punitive damages.[1] After trial, Green Tree moved under Rule 50(b) for judgment as a matter of law, arguing that there was insufficient evidence to sustain the jury's verdict that Green Tree had discriminated against Golson on the basis of pregnancy or that Golson was entitled to punitive damages. The district court denied the motion. Green Tree appeals the denial of its Rule 50(b) motion.

Under Rule 50(b), the district court should grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 297 (4th Cir. 1998) (internal quotation marks and alterations omitted). We review *de novo* a district court's denial of a Rule 50(b) motion for judgment as a matter of law. *See Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999). "If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [its] favor, we are constrained to affirm the jury verdict." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001). Having carefully reviewed the record in the light most favorable to Golson, we conclude that the district court did not commit reversible error in denying Green Tree's motion for judgment as a matter of law on the pregnancy discrimination claim or as to Green

---

[1]Golson also alleged that Green Tree discriminated against her on the basis of race, but the jury rejected this claim.

Tree's liability for punitive damages. We also reject Green Tree's argument that the jury's award of punitive damages is excessive.

## A.

First, the evidence was sufficient to support the jury's verdict that Green Tree engaged in pregnancy discrimination. In appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). To establish a prima facie case, Golson was required to present evidence (1) establishing that she is a member of a protected class; (2) establishing that she was performing her work satisfactorily at the time of her discharge; (3) showing that she was actually discharged; and (4) demonstrating that she was treated less favorably than nonpregnant employees, or supporting a reasonable inference of discrimination. *See Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-06 (4th Cir. 1992). Only the second and fourth elements are in dispute.

Viewed in the light most favorable to Golson, the evidence demonstrates that Golson was performing adequately at the time of her discharge. Golson was employed as a collector of delinquent loans in Green Tree's Columbia office until she was dismissed in September 1997. Collectors were given performance goals each month for the number of accounts that they were expected to bring current. A collector who consistently failed to meet the goal was subject to probation and potential dismissal if the sub-par performance continued. Golson's production was generally outstanding during the first half of 1997. By the summer, Golson was pregnant and had so informed Green Tree. Golson was forced to miss work from July 23 to August 5 with pregnancy-related medical problems and was admitted to the hospital for three of the days that she missed. While Golson was away, Green Tree assigned a new employee to close Golson's accounts for the month. Golson's accounts fell short of the performance goal in July. However, there was testimony from Debra Paxton, one of Golson's supervisors, that if a collector provided written verification from a doctor that he or she was not able to work for three or more days, then Green Tree would not hold the collector account-

able for his or her goals that month. During her absence, Golson provided just such a doctor's note to Thad Pope, one of her supervisors. Nevertheless, when Golson returned in August, Pope placed her on 90-day probation for failure to meet her performance goals. Golson was told to improve her numbers in August but she was not given a specific goal. In early September, even though she had indeed improved the status of her accounts, Golson was terminated for failing to meet specific performance goals. Viewing the testimony in Golson's favor, the jury could have reasonably concluded that Golson was not responsible for the poor numbers in July and that she had done all that was expected of her in August. On this record, we cannot conclude that "there is no legally sufficient evidentiary basis for a reasonable jury to find" in Golson's favor, *DeJarnette*, 133 F.3d at 297 (internal quotation marks and alterations omitted), on the question of whether she was performing adequately at the time of her discharge.

The evidence was also sufficient to support a reasonable inference of discrimination. Such an inference could be drawn, for example, from the evidence that Green Tree did not hold other collectors responsible for their accounts if they were absent for medical reasons for longer than three days and could provide a doctor's letter to that effect. Even though Golson provided Pope with a doctor's note, Green Tree did not excuse her from her performance goal. Considering this evidence with testimony that Golson was not held accountable for her accounts when she was on medical leave in 1996 for a condition unrelated to pregnancy, the jury could reasonably infer that Green Tree excused nonpregnant employees who presented a similar doctor's verification.

There was also evidence that in April 1997, Golson told Pope and Ira Usry, to whom Pope reported, that she was considering becoming pregnant, in which case she would either need Green Tree to transfer her to a less stressful position that demanded fewer and more standard work hours, or she would need to seek such a position from another employer. Golson was assured that if she became pregnant, Green Tree would place her in such a position with the company. In June 1997, after Golson informed Green Tree that she was in fact pregnant, Pope and Usry repeated that they intended to transfer Golson to a department that imposed a less demanding schedule provided that Golson train her replacement, which she did. However, when Golson

returned from her pregnancy-related absence, Green Tree not only failed to transfer her but dismissed her shortly thereafter. From this evidence, the jury could infer that Green Tree used the promise of a transfer as an inducement for Golson to keep working and to stay long enough for Green Tree to find a replacement who was not pregnant. On the whole, we conclude that there is sufficient evidence to support Golson's prima facie case for pregnancy discrimination.

There was also sufficient evidence for the jury to reject Green Tree's asserted nondiscriminatory reasons for dismissing Golson. Green Tree's primary justification for firing Golson was that she failed to meet the company collection goals. Pope testified that Golson was held accountable for her goals because she failed to apply formally for a medical leave of absence; however, Pope admitted he was told by Barb Didrikson, the head of the Human Resources Department for Green Tree, that Golson was required only to procure a doctor's letter of disability. Pope also denied that he even received a doctor's excuse from Golson, but there was evidence that Golson delivered the document by hand to Green Tree and placed it on Pope's desk. Despite the apparent importance of a doctor's letter of disability, Pope conceded he did not discuss this topic with Golson. Furthermore, Golson was issued a 90-day probationary notice, over which time she was directed to improve her performance. Green Tree, however, dismissed her after only 30 days. Viewing the evidence and the inferences to be drawn from the evidence in Golson's favor, we are satisfied that the record supports the jury's rejection of Green Tree's nondiscriminatory explanation for dismissing her.[2] Moreover, this evidence, coupled with Golson's prima facie case, is sufficient to allow the jury to conclude that Green Tree unlawfully discriminated. *See Reeves*, 530 U.S. at 148.

## B.

Punitive damages are available for a Title VII violation when the discriminatory action was conducted "with malice or with reckless

---

[2]We also note that, during cross examination, Pope's testimony about what Golson told him about her pregnancy was impeached by his prior statements at deposition, adding further fuel to Golson's argument that Green Tree's reason for letting her go was unworthy of credence.

indifference to the federally protected rights" of the plaintiff. 42 U.S.C.A. § 1981a(b)(1) (West 1994). The terms "malice" and "reckless indifference" refer to "the employer's knowledge that it may be acting in violation of federal law." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999). Under § 1981a, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* at 536. Even if malice or reckless indifference is demonstrated, the plaintiff must still prove that liability for punitive damages should be imputed to the employer. *See id.* at 539. The determination of whether liability should be imputed requires a court to decide whether the decisionmaker was employed in a managerial capacity and, if so, whether the manager was acting within the scope of his employment when the decision was made. *See Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 443 (4th Cir.), *cert. denied*, 531 U.S. 822 (2000). Even then, however, "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Kolstad*, 527 U.S. at 545 (internal quotation marks omitted).

Significantly, Green Tree does not argue that there is no evidence of malice or reckless indifference, nor does Green Tree challenge that Pope and Usry were employed in managerial capacities or that they were acting within the scope of their employment when they dismissed Golson. Green Tree's only argument is that the decision of Pope and Usry to terminate Golson because of her pregnancy should not be imputed to Green Tree because the company engaged in a good-faith effort to ensure compliance with Title VII. *See Kolstad*, 527 U.S. at 545. Because Green Tree has elected to challenge its liability for punitive damages solely on the basis that it engaged in good-faith efforts to comply with Title VII, we will assume that there was sufficient evidence of malice or reckless indifference to sustain an award of punitive damages.

It is Green Tree's burden to establish that it has engaged in a good-faith effort to comply with Title VII such that it may avoid punitive damages for conduct by one of its managers or supervisors that might otherwise warrant submission of punitive damages to a jury. *See e.g., Romano v. U-Haul, Int'l*, 233 F.3d 655, 670 (1st Cir. 2000), *cert. denied*, 122 S. Ct. 41 (2001); *Passantino v. Johnson & Johnson Con-*

*sumer Prods., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999). To satisfy its burden of demonstrating good faith under Title VII, Green Tree relied on the existence of its employee handbook, given to each new hire, which sets forth Green Tree's general "Equal Employment Policy" and encourages employees to report immediately "any type" of discrimination or harassment to a supervisor or to the Human Resources Department. This policy is posted in all of Green Tree's offices. However, the mere existence of an anti-discrimination policy or the presentation of seminars touching on the anti-discrimination laws does not automatically satisfy the good-faith requirement, although it is some evidence of good faith. *See Lowery*, 206 F.3d at 445-46. Evidence that an employer is not sincerely committed to enforcing the policy may undermine the existence of a company-wide policy. *See id.* at 446.

There is nothing in the record showing precisely what was included in Green Tree's "Equal Employment Policy." We do know, however, what was not included in the policy — any mention of pregnancy discrimination. Accordingly, no matter how effectively the policy in the handbook was disseminated, Green Tree failed to notify its employees that discrimination on the basis of pregnancy violates Title VII. Furthermore, even though Didrikson testified that Green Tree tried to enforce its "Equal Employment Policy" through "other activities," there were no specifics given and there was no evidence that Green Tree required or even offered follow-up training or education on Title VII compliance. The only other evidence that Green Tree offered to show good faith was the issuance of a company newsletter which included a toll-free number for employees to lodge general complaints. In sum, there is nothing in the record to show that Green Tree ever made its managers and supervisors aware that pregnancy discrimination is a form of gender discrimination that violates Title VII.

Moreover, there was evidence from which a jury could have reasonably concluded that although Green Tree had a general anti-discrimination policy in place, the company was not committed to enforcing it. Viewing the evidence in the light most favorable to Golson, the evidence showed that when Golson was placed on probation, she complained to Pope that she was being treated unfairly because she had been out due to her pregnancy and, despite the doctor's letter

she provided, Golson was still being held accountable for her goals. In essence, Golson complained to her supervisor, as the handbook required, that she was being unfairly treated because of her pregnancy. Pope conceded that he is required to report to the Human Resources Department any complaint asserting unfair treatment or discrimination, and that he would report a complaint of pregnancy discrimination immediately. Pope then testified he would have told Didrikson that Golson believed that she had been unfairly placed on probation. A reasonable jury could conclude that Pope informed Didrikson, the head of Human Resources, that Golson believed she was being mistreated and that the mistreatment was because of her pregnancy. And, there was evidence that the Human Resources Department had Golson's letter from her doctor that indicated her absence, which led to her probation and termination, was related to her pregnancy. Nevertheless, Didrikson ignored Golson's complaint and failed to take any investigatory steps. There is no evidence of any follow-up questioning by Didrikson of either Pope or Golson, and the jury was left with the clear impression that Green Tree, in spite of its announced policy, ignored completely Golson's complaint.

Having carefully reviewed the record on appeal in the light most favorable to Golson, we are not convinced that a reasonable juror could only conclude that Green Tree engaged in a good-faith effort to comply with Title VII. Accordingly, we refuse to disturb the jury's conclusion that punitive damages were warranted against Green Tree in this case.

## C.

On a motion for a new trial, the court may set aside a verdict and grant a new trial if the punitive damages award will result in a miscarriage of justice. *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). If the punitive damages award is grossly excessive, it may violate due process. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 562 (1996). Green Tree argues only that Golson's award of punitive damages is excessive under *BMW*.[3] Accordingly, we must determine if Golson's award was so excessive that it violated due process.

---

[3]*BMW* examined the excessiveness of a punitive damages award imposed in state court, *see* 517 U.S. at 574, but courts have examined

"Fundamental to the due process analysis is whether the defendant received fair notice that the conduct in question was prohibited and what the potential penalty for engaging in that conduct could be." *Romano*, 233 F.3d at 672; *see BMW*, 517 U.S. at 574. *BMW* offers us three guideposts to use when examining whether an award is excessive under the due process clause: (1) the "degree of reprehensibility" of the wrongdoing; (2) "the disparity between the harm or potential harm suffered by [Golson] and [her] punitive damages award"; and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW*, 517 U.S. at 575. These guideposts are aimed at helping courts determine the ultimate issue of whether the defendant received sufficient notice of the size of the potential sanction that could be imposed for the wrongdoing at issue. *See id.* at 574.

Golson was awarded punitive damages under 42 U.S.C.A. § 1981a, which imposes a $300,000 damages cap for employers the size of Green Tree. *See* 42 U.S.C.A. § 1981a(b)(3)(D). In light of the statutory cap on damages, an employer has notice of the range of damages that could be imposed if a trier of fact concludes that the employer violated Title VII and that it did so "with malice or with reckless indifference to the federally protected rights" under 42 U.S.C.A. § 1981a(b)(1). *See Romano*, 233 F.3d at 673. Furthermore, the fact that the jury's award of punitive damages was well below the statutory maximum and comes within the range that Congress considers reasonable is a strong indicator that Golson's award was not unconstitutional. *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999); *Romano*, 233 F.3d at 673.

Having carefully considered the record in light of the other *BMW* factors, we are not persuaded that Golson's award of punitive damages must be vacated. The record supports the view that Green Tree's

---

punitive damages awards in Title VII actions under a *BMW* analysis, *see, e.g.*, *Romano*, 233 F.3d at 672-74. Because Green Tree limits its argument to *BMW*'s analytical framework, and Golson does not object, we assume without deciding that *BMW*'s due process analysis applies in these circumstances. *But see Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000), *cert. denied*, 531 U.S. 1153 (2001).

conduct was reprehensible if Mrs. Golson is given the benefit of all favorable inferences from the evidence as we must. Furthermore, the ratio of punitive to actual damages is not unconstitutionally high. Although Golson was awarded compensatory damages of only $1,500, we may consider her award of $30,000 in back pay for purposes of determining the ratio, *see EEOC v. W & O, Inc.*, 213 F.3d 600, 615 (11th Cir. 2000), resulting in a punitive damages to actual damages ratio of approximately 7:1. *See id.* at 616 (upholding an 8.3 to 1 ratio of punitive damages to back pay in a pregnancy discrimination case). Accordingly, we affirm the award of punitive damages.

*AFFIRMED*