**FILED**
**June 15, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0890 – *Jordan, et al. v. Jenkins, et al.*
No. 19-0899 – *Safeco Ins. Co. v. Jenkins, et al.*

WOOTON, J., dissenting, joined by Walker, J., as to No. 19-0890:

With respect to the majority's reversal of these consolidated appeals, I respectfully dissent. In the *Jordan* appeal, the purported error upon which the jury's verdict is reversed was not adequately preserved below. The new point of law, that loss of use damages must be limited to a time period allowing for "reasonabl[e]" replacement, while inoffensive on its face, is used as a vehicle to provide a new trial and elevate factual defenses the Jordans failed to advance at trial. In the *Safeco* appeal, the punitive damages award fell within the parameters of our punitive damages statute, a legislative enactment that abrogates our prior caselaw permitting judicial adjustment of such awards, and therefore should remain intact.

In regard to the Jordans' appeal, the majority reverses the jury verdict in its entirety and remands for a new trial on damages, liability having been admitted previously. Despite the Jordans' assertion of numerous alleged trial errors, the majority finds reversible error only in the manner in which the jury was instructed on loss of use damages.[1] However, the Jenkinses failed to object to the loss of use instruction given by the trial court,

---

[1] Although the majority addresses the erroneous admission of the testimony from the claims adjuster in this personal injury action, it does not reverse on that ground, nor does it state whether such error, standing alone, would be reversible. Like the instructional error on which the majority relies, however, the Jordans acquiesced to the calling of the claims adjuster.

1

thereby waiving their ability to assert that it was an incorrect statement of law: "'No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection[.].'" Syl. Pt. 1, in part, *Shia v. Chvasta*, 180 W. Va. 510, 377 S.E.2d 644 (1988). To evade this failure, the Jordans focus on the trial court's refusal to give an additional, standalone mitigation instruction, to which refusal they did properly object. In order to grant the Jordans a new trial, the majority crafts a new point of law holding that loss of use must be limited to a period no longer "than that reasonably needed to replace it, which shall be determined by the trier of fact," thereby injecting a mitigation requirement into a loss of use claim.

Again, while I take no particular issue with the creation of a new point of law to clarify this requirement, it does not necessarily follow that the Jordans are entitled to a new trial as a result. Importantly,

> [a] trial court . . . has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). As indicated, the Jordans made no objection whatsoever to the loss of use instruction as it was given.

2

More importantly with respect to the manner in which this case was tried,

> [a] trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) *it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.*

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994) (emphasis added). Simply put, the Jordans did not make mitigation an "important point in the trial," opting instead to affirmatively blame their insurer for any extended loss of use occasioned by the Jenkinses. The Jordans urge in their brief that "the jury should have been instructed *and the Jordans permitted to argue*" that the Jenkins' loss of use claim was limited to the time in which they obtained a replacement vehicle. (Emphasis added). Critically, the Jordans fail to point the Court to any place in the record where they were prohibited from making such an argument. Further, the loss of use instruction as crafted *specifically* included mitigation language, permitting the jury to consider that "Joe Jenkins may have had another vehicle to use during this time [and] that he bought a replacement vehicle and replaced his damaged vehicle in some other manner[.]"[2] To the extent the Jordans failed to highlight that instruction and the facts which supported their mitigation argument, this was a

---

[2] The instruction more specifically connected such mitigation evidence to the aggravation and inconvenience claim; however, the majority finds any error with respect to aggravation and inconvenience inadequately preserved, as is the case with nearly all of the Jordans' assignments of error.

3

deliberate trial tactic, serving to waive any such error. I am authorized to state that Justice Walker joins in this dissent as to the Jordans' appeal, No. 19-0890.

I further dissent to the majority's reversal of the verdict in Safeco's appeal, concluding that an award of punitive damages which falls beneath the statutory punitive damages cap established in West Virginia Code § 55-7-29(c) (2015) remains subject to further judicial adjustment. The majority effectively nullifies this statute, finding that the statute has changed nothing about our existing body of punitive damages caselaw and that this caselaw permits the judiciary to create a new, lower cap in contravention of the cap specifically established by statute.

The common law analysis set forth in *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), and the ratio authorized by *TXO Production Corporation v. Alliance Resources Corporation*, 187 W. Va. 457, 419 S.E.2d 870 (1992), were long-standing and well-known at the time West Virginia Code § 55-7-29(c) was enacted in 2015. Had the Legislature intended simply for this body of caselaw to continue to guide punitive damages assessments, enactment of the statute would have been wholly unnecessary. "[C]ourts presume the Legislature drafts and passes statutes with full knowledge of existing law." *W. Va. Health Care Cost Rev. Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 336, 472 S.E.2d 411, 421 (1996). By enacting West Virginia Code § 55-7-29, the Legislature plainly intended to remove the highly subjective and unpredictable assessments authorized by *Garnes* from the courts' purview. The mere fact of the statute's

4

enactment demonstrates the Legislature's intention that punitive damages awards which fall within its parameters are presumptively proper and not subject to further judicial adjustment.

It is critical to note that this issue of fundamental importance to our State presented itself only tangentially to the Court in the instant case. The thrust of Safeco's petition for appeal was that the punitive damages award was tainted by inadmissible evidence, and that in any event the evidence did not warrant a punitive award. While Safeco assigned as error the alleged lack of proportionality of the punitive verdict, it failed to so much as mention the statute in its initial petition for appeal. In response, respondents asserted the statute's predominance over Safeco's half-hearted proportionality argument; Safeco's reply merely makes a conclusory assertion that monetary awards beneath the cap are still subject to analysis under *Garnes*.[3] Accordingly, neither party fully briefed the

---

[3] Even in Safeco's scant reply on this issue, its discussion is devoid of any compelling analysis. In sum, Safeco cites opinions issued after the enactment of West Virginia Code § 55-7-29, suggesting that any reference therein to *Garnes* establishes that this Court recognizes its continued vitality. Most of the cases cited are memorandum decisions, which this Court has made clear are only of "limited" precedential value; any such value is virtually non-existent where the issue was not actually addressed or the statute at issue mentioned in the case. Syl. Pt. 5, in part, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014).

In the lone signed opinion from this Court cited by Safeco, the mention of *Garnes* was merely a reference to its citation by respondent therein. *See State ex rel. State Farm Mut. Auto. Ins. Co. v. Cramer*, 237 W. Va. 60, 67, 785 S.E.2d 257, 264 (2016). Similarly, the reference to *Garnes* in *Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331, at *3 (W. Va. Dec. 20, 2019) (memorandum decision), was merely citational—*Garnes* was quoted in the case actually cited in the memorandum decision. The remaining cases citing (continued . . .)

prime issue:  whether West Virginia Code § 55-7-29(c) served to abrogate our body of punitive damages caselaw.  Regardless, the majority presumes to resolve with finality this underdeveloped issue of fundamental importance to the State.

West Virginia Code § 55-7-29(c) provides: "The amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater."  The majority's new syllabus point holds that, notwithstanding this legislative prescription of the acceptable range of a punitive damages award, it remains within the province of the judiciary to create an even *lower* cap under the auspices of *Garnes,* and even more inexplicably, to apparently employ the *higher* 5:1 ratio set forth in Syllabus Point 15 of *TXO*.[4]  On what basis it presumes to strip the Legislature of its authority to delineate an acceptable range of punitive damages, the majority opinion does not state.

_____

to *Garnes* are from two federal courts, neither of which acknowledge the enactment of West Virginia Code § 55-7-29(c).

[4] The majority's new syllabus point holds that the trial court must "apply the model specified in Syllabus Points 3 and 4 of *Garnes* [] and Syllabus Point 15 of *TXO*[.]"  Syllabus point 15 of *TXO* provides only that the outer limit ratio of punitive damages to compensatory damages is "roughly 5 to 1" and that "much higher ratios are not *per se* unconstitutional."  187 W. Va. 457, 419 S.E.2d 870.  How the majority concludes that this higher ratio still has any applicability in view of the express 4:1 ratio limit and alternative monetary cap contained in West Virginia Code § 55-7-29(c) is not explained.  With respect to *Garnes*, it is at least conceivable that a damages award might be further subject to its reductive effect, but *TXO's* holding countenances ratios plainly in excess of the 4:1 ratio which the Legislature has set as the upper limit.

Establishing such parameters to recovery in a civil action is entirely within the Legislature's authority. Much as it may set statutory limitations on the types of damages recoverable, the level of proof required for damages, parties against whom the damages may be awarded, and the like, the Legislature may likewise establish statutory damages awards or ranges for acceptable awards. *See Horton v. Oregon Health & Sci. Univ.*, 376 P.3d 998, 1041 (Ore. 2016) ("[T]he legislature can[] define, as a matter of law, the nature and extent of damages that are generally available in a class of cases."); *Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 509 S.E.2d 307, 314 (Va. 1999) ("If it is permissible for a legislature to enact a statute of limitations completely barring recovery in a particular cause of action . . . it should be permissible for the legislature to impose a limitation upon the amount of recovery as well."); *see also Siebert v. Okun*, No. S-1-SC-37231, 2021 WL 959248, at *12 n.3 (N.M. Mar. 15, 2021) (noting 24 of 30 states enacting damages caps found "statutory limit on recovery is a matter of law within the purview of the state legislature" and collecting cases). In fact, the United States Supreme Court has stated that "a reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583 (1996) (quoting *Browning–Ferris Indust. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J., concurring in part and dissenting in part)).

Notably, this appeal presents no challenge whatsoever to the constitutionality of the statute itself.[5] While the majority takes no issue with the statute's facial clarity, it seizes upon the statute's silence as to the continued applicability of the *Garnes* factors to permit courts to further reduce such an award. However, when a statute is silent as to an issue, this Court must look to its intent. "To determine legislative intent, we start with the text of the statute in question and then move 'to the structure and purpose of the Act in which it occurs.'" *W. Va. Health Care Cost Rev. Auth.*, 196 W. Va. at 338, 472 S.E.2d at 423 (quoting *N. Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The majority fails to give meaningful consideration to whether the Legislature intended for the statute to provide a standalone range of acceptable punitive damages awards or merely serve as an overlay to our existing caselaw. In this instance, we need look no further than the statute's text to conclude that the Legislature intended to

---

[5] Nor does the majority's casually vague references to "due process" provide a sufficient justification to invade the Legislature's province to prescribe acceptable damages ranges. *See Golson v. Green Tree Fin. Servicing Corp.*, 26 F. App'x 209, 216 (4th Cir. 2002) ("[T]he fact that the jury's award of punitive damages was well below the statutory maximum and comes within the range that Congress considers reasonable is a strong indicator that Golson's award was not unconstitutional."); *Romano v. U-Haul Int'l*, 233 F.3d 655, 673 (1st Cir. 2000) ("[A] punitive damages award that comports with a statutory cap provides strong evidence that a defendant's due process rights have not been violated."); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999) ("The [punitive damages] award in this case falls within the range that Congress has determined to be reasonable, thus undermining Wal-Mart's [unconstitutional excessiveness] argument."); *Bubar v. NorDx*, No. 2:16-CV-00201-JHR, 2018 WL 715329, at *12 (D. Me. Feb. 4, 2018) (noting punitive damage award not subject to constitutional excessiveness challenge because it "falls within the MHRA's statutory cap on penalties based on size of employer").

create wholesale parameters for punitive damages which bear the Legislature's imprimatur of reasonableness, free of further judicial intrusion.

As indicated above, West Virginia Code § 55-7-29(c) provides that punitive damages "may not exceed the greater of four times the amount of compensatory damages or $500,000[.]" Obviously, the statute provides both a ratio and a monetary cap, the greater of which sets the ceiling for a punitive damages award. In the instant case, the compensatory damages were $1,000 and the punitive damages $60,000, giving rise to an award well beneath the applicable cap of $500,000, but having a 60:1 ratio. Under the plain statutory language, the greater of the two—$500,000—provides the cap. However, the majority finds that where the monetary cap provides the ceiling, an award may still be subject to a proportionality and/or excessiveness analysis under our precedents, thereby creating a *lower* cap than the one prescribed by the Legislature.

Clearly, the majority is offended by the 60:1 ratio between the compensatory damages and punitive damages and seeks to utilize *Garnes* to bring that ratio more in line with the 5:1 ratio sanctioned in *TXO*. However, were the Legislature's intent to *only* sanction awards which do not exceed a certain ratio, it would have set the statutory ceiling at the 4:1 ratio and left it at that. Further, had it intended for awards falling within its parameters to still be subject to judicial downward adjustment, it would have expressly

9

said as much,[6] or included the required considerations for alteration of the cap in the statute,[7] just as many other states have done. Our statute does neither. In fact, had the Legislature intended the awards to continue to be scrutinized under our existing body of caselaw requiring examination of the conduct, actor, punitive value, etc., the statute would be unnecessary at best and meaningless at worst.[8]

---

[6] *See, e.g.,* Ala. Code § 6-11-21(i) (1999) ("Nothing herein shall be construed as . . . limit[ing] the duty of the court, or the appellate courts, to scrutinize all punitive damage awards, ensure that all punitive damage awards comply with applicable procedural, evidentiary, and constitutional requirements, and to order remittitur where appropriate."); Fla. Stat. Ann. § 768.73(1)(d) (1999) ("This subsection is not intended to prohibit an appropriate court from exercising its jurisdiction . . . in determining the reasonableness of an award of punitive damages that is less than three times the amount of compensatory damages.").

[7] *See, e.g.,* Alaska Stat. Ann. § 09.17.020(g) (West 2003) (removing actions from cap where defendant "motivated by financial gain"); Colo. Rev. Stat. Ann. § 13-21-102(2) (a)-(c) (West 2003) ("[T]he court may reduce or disallow the award of exemplary damages to the extent that[] (a) The deterrent effect of the damages has been accomplished; or (b) The conduct which resulted in the award has ceased; or (c) The purpose of such damages has otherwise been served."); Fla. Stat. Ann. § 768.73(1)(c) (West 1999) (elevating cap for certain conduct and removing cap altogether where there is "specific intent to harm"); Ga. Code Ann. § 51-12-5.1(f) (West 2010) (removing cap where specific intent to cause harm or defendant acted "under the influence of alcohol [or] drugs other than lawfully prescribed drugs"); Kan. Stat. Ann. § 60-3701(b) (West 1988) (enumerating *Garnes*-type factors to be considered for punitive awards within statutory cap); Mo. Ann. Stat. § 510.265 (West 2020) (exempting actions against the State, involving felonies, and certain enumerated statutory actions from cap); Nev. Rev. Stat. Ann. § 42.005(2) (West 1995) (removing cap for actions involving product liability, bad faith, discriminatory housing practices, toxic spillage, and defamation); S.C. Code Ann. § 15-32-530(C) (2012) (removing cap for actions involving specific intent to cause harm, felonies, or acting under influence of drugs or alcohol); Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c) (2009) (removing cap for damages arising from enumerated felonies).

[8] Our caselaw had already established a 5:1 ratio guideline; if the Legislature merely desired to reduce that ratio to 4:1, it could have done only that in the statute. Instead, the (continued . . .)

By including an *alternative* monetary cap, the Legislature was expressing that awards that either fell beneath the stated ratio *or* which fell monetarily beneath that cap were permissible, giving the benefit of the higher ceiling. The purpose was plainly to remove the guesswork from the unpredictable range of ratios and other highly subjective considerations encouraged by our existing body of caselaw. It did so by establishing a ratio ceiling *and* an alternative monetary ceiling, under which the amount is deemed to be of such de minimis concern as to escape further proportionality analysis. *See Hamlin v. Hampton Lumber Mills, Inc*., 246 P.3d 1121, 1135 (Ore. 2011) (Gillette, J., dissenting) ("The key is to recognize that some punitive damages awards are small enough that they do not implicate substantive due process concerns . . . . [Such] [a]wards below the *de minimis* amount would not be subject to the *Gore* guideposts and would not require any sort of substantive *Gore/Campbell* judicial review at all.").

Because the majority authorizes courts to substitute their judgment as to the acceptable cap on punitive damages in place of the Legislature's determination of an appropriate cap as set forth in West Virginia Code § 55-7-29(c), I respectfully dissent.

---

inclusion of an alternative *specific* monetary cap—a figure which is derived wholly from the legislative wisdom rather than caselaw—establishes its policy statement that amounts less than $500,000 are presumptively acceptable.

11